IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

J & J SPORTS PRODUCTIONS, INC.,

Plaintiff,

v.   CIVIL ACTION NO. 2:14cv269

BRUTTI'S LLC d/b/a
MANSION ALLURE & BRUTTI'S,
&
JOHN DOE,

Defendants.

### *MEMORANDUM OPINION AND ORDER*

Before the Court is Plaintiff J & J Sports Productions, Inc.'s Motion for Default Judgment against Defendant Brutti's LLC, d/b/a Mansion Allure & Brutti's, and an unnamed defendant, John Doe.[1] Pl.'s Mot. for Default J., ECF No. 7. On June 4, 2014, Plaintiff filed a Complaint alleging that Defendants showed the June 9, 2012 *Manny Pacquiao v. Timothy Bradley, WBO Welterweight Championship Fight* at Mansion Allure without Plaintiff's authorization, in violation of 47 U.S.C. §§ 553 and 605 (2013). Defendants have neither appeared nor filed an answer or motion in response to the Complaint. Plaintiff now moves this Court for a default judgment. On October 16, 2014, a hearing was held, at which Defendants failed to appear, either individually or by counsel. As stated in open court, and for reasons set forth below, Plaintiff's Motion for Default Judgment against Defendant Brutti's LLC is **GRANTED**.

---

[1] As Defendant John Doe has not been identified, the Court will be making no decision concerning John Doe. *See J & J Sports Productions, Inc., v. Prestige Lounge, LLC*, 2013 WL 6506201, at *1 n.1 (Dec. 11, 2013).

## I. PROCEDURAL AND FACTUAL HISTORY

On June 4, 2014, Plaintiff filed a two-count Complaint alleging that Defendants violated 47 U.S.C. §§ 553 and 605 by broadcasting Plaintiff's closed-circuit broadcast of the June 9, 2012 *Manny Pacquiao v. Timothy Bradley, WBO Welterweight Championship Fight Program* ("the Event") to patrons within Mansion Allure. Pl.'s Compl. 4–7, ECF No. 1. Plaintiff is a California corporation and nationwide closed-circuit distributor of sports and entertainment programming whose principal place of business in Campbell, California. Pl.'s Compl. ¶ 4; Gagliardi Aff. ¶ 3, August 14, 2014, ECF No. 9. Defendant Brutti's has its principal place of business at 467 Court Street, in Portsmouth, Virginia. Pl.'s Compl. ¶ 5. Mansion Allure, where the Event was broadcast, is located at 463 Court St., in Portsmouth, Virginia. Shelby Aff. 1, June 14, 2012, ECF No. 11. Plaintiff paid substantial fees to obtain distribution rights to the Event which it made available for broadcast, upon payment of a licensing fee, to various commercial establishments such as theatres, arena, bars, clubs, lounges, and restaurants throughout Virginia. Pl.'s Compl. ¶ 6. These "sub-licensees" paid an occupancy-based licensing fee which ranged from $2,200.00 for establishments with an occupancy rate of 100 persons and less, to $10,200.00 for establishments with an occupancy rate of 401 to 500 persons. Gagliardi Aff., Ex. 1. The transmission of the Event was electronically coded or "scrambled," and its signal could not be decoded without electronic decoding equipment. Pl.'s Compl. ¶ 10. Establishments which paid Plaintiff's licensing fee were provided the electronic decoding capability/satellite coordinates needed to receive the signal. Pl.'s Compl. ¶ 12.

Although the transmission of the Event was available to Defendants for purchase, Defendants did not contract with Plaintiff or any of its agents to obtain broadcast rights. Pl.'s

2

Compl. ¶ 11; Gagliardi Aff. ¶ 7. Plaintiff alleges that on June 9, 2012, Defendant broadcast the Event to its patrons Pl.'s Compl. ¶ 11. As the Event could not have been "mistakenly, innocently, or accidentally intercepted," Gagliardi Aff. ¶ 9, Plaintiff contends Defendants' actions were committed willfully and with the express purpose and intent to secure a commercial advantage and private gain. Pl.'s Compl. ¶14.

This lawsuit arose after Plaintiff began noticing a marked erosion in sales of its programming. Gagliardi Aff. ¶ 4. Plaintiff determined the cause was "rampant piracy" by unauthorized and unlicensed commercial establishments. Gagliardi Aff. ¶ 4. Plaintiff claims it has suffered losses of several million dollars of revenue due to signal piracy. Gagliardi Aff. ¶ 11. To safeguard its rights, Plaintiff embarked on a nationwide effort to identify and prosecute commercial establishments that pirate its signals. Gagliardi Aff. ¶ 5. With respect to the instant case, Plaintiff asserted that the unlawful interception and broadcasting of its programming could have been achieved by one of a number of means. They include the use of black boxes, smart cards, illegal cable drops or splices, illegal satellite authorization codes, or the purposeful misrepresentation of a commercial establishment as a residential property to enable the purchase of programming at the residential rate. Gagliardi Aff. ¶ 9. Plaintiff has not indicated which method Defendants used to intercept and broadcast the Event.

According to Plaintiff's President, Mr. Joseph M. Gagliardi, in order to identify signal pirates, Plaintiff retained, at considerable cost, auditors and law enforcement personnel and gave them its list of authorized and legal locations. Gagliardi Aff. ¶ 6. Its auditors and investigators only visited illegal locations, i.e., those establishments which had not contracted with Plaintiff. At the hearing Plaintiff's counsel entered into evidence the affidavit of Mr. Darren Shelby, an

3

investigator who observed the Event's broadcast at Mansion Allure. Shelby Aff. 1. Shelby stated he paid a cover charge of $20.00 to be admitted. Shelby Aff. 1. He also conducted three patron headcounts: 150 patrons during the first count, 86 during the second count, and 108 during the third count. Shelby Aff. 2. Shelby also stated that Mansion Allure had a capacity of approximately 400 people. It is unclear whether this figure is the official maximum occupancy rate or merely Shelby's estimate. Shelby Aff. 1.

Plaintiff provided evidence that the licensing fee for Defendant to have legally shown the Event in an establishment with a fire code occupancy rate of 150 persons would have been $4,200.00. *See* Gagliardi Aff. ¶ 8; Ex. 1 (rate card showing cost of licensing as $4,200.00 for establishments with minimum seating of 100 to 200 persons). Though Defendant had not purchased the right to broadcast the Event to its patrons, the investigator observed various portions of the Event displayed on televisions and projection screens on three floors of Mansion Allure. Shelby Aff. 1. Specifically, Shelby's affidavit states that during his 40 minutes in Mansion Allure, he observed Bradley highlights from a previous fight, commentator Larry Merchant, and Pacquiao prepping before the fight. Shelby Aff. 1. Shelby's affidavit includes distinguishing features of the establishment such as the layout, a physical description of the bartender who served him, and license plate numbers for six vehicles located in the parking lot. Shelby Aff. 1. Shelby's affidavit also includes pictures of the exterior of Mansion Allure. Shelby Aff. 3–4.

On June 9, 2014, Defendant Brutti's was served with the Summons and Complaint, ECF No. 4, but no Answer was filed by Defendant. Plaintiff did not execute service upon Defendant John Doe. On July 28, 2014, Plaintiff filed a request for entry of Default, ECF No. 5, which the

Clerk of Court granted on July 29, 2014. ECF No. 6. Plaintiff filed the instant motion and supporting memorandum, ECF No. 8, on August 5, 2014. In support of its Motion, Plaintiff submitted the aforementioned affidavit of Joseph M. Gagliardi, Plaintiff's President.

In the Complaint Plaintiff seeks statutory damages of $10,000.00, enhanced statutory damages of an unspecified amount under 47 U.S.C. §§ 553 and 605. Plaintiff also submitted an affidavit from its counsel for attorney's fees ($2,060.00) and costs ($442.76). Mem. in Supp. of Mot. for Default J., Ex. 1, McCann Affidavit, ECF No. 8. Defendants have not responded and the time for doing so has expired.

On October 16, 2014, this Court held a hearing on the instant motion. Defendants failed to appear, either individually or by counsel. When asked by this Court whether Plaintiff had had any telephonic or written contact with any representative of Defendants, Plaintiff's counsel responded that he had written contact via the service of the Complaint to the registered agent of Defendant Brutti's LLC and the mailing of the pleadings. Plaintiff's counsel stated that prior to filing its lawsuit his client had sent written correspondence to Defendant Brutti's in June 2013 and November 2013. At the hearing, Plaintiff also revised its damages request to $5,000.00 in statutory damages and $25,000.00 in enhanced statutory damages.

## II. LEGAL STANDARDS

### A. Jurisdiction and Venue

A federal court has subject matter jurisdiction over claims that arise under federal law. *See* 28 U.S.C. § 1331. Plaintiff alleges violations of 47 U.S.C. §§ 553 and 605 which give rise to a federal question and prima facie jurisdiction of the federal courts. *J & J Sports Productions, Inc., v. Prestige Lounge LLC*, 2013 WL 6506201, at *1 (E.D. Va. Dec. 11, 2013). Personal

jurisdiction over a defendant is established when a defendant has sufficient "minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)), and when the defendant is subject to the personal jurisdiction of the courts of general jurisdiction of the forum state. *See* Fed. R. Civ. P. 4(k)(1)(A). A business within the State clearly has sufficient minimum contacts with the forum state, and that business is subject to the jurisdiction of the courts of Virginia under Code of Virginia §§ 8.01-328.1. *Joe Hand Promotions, Inc., v. The Wing Spot Chicken & Waffles, Inc.*, 920 F. Supp. 2d 659, 662 (E.D. Va. 2013).

The requirements for personal jurisdiction are satisfied because Defendant Brutti's place of business is located in Portsmouth, Virginia, which is within the Eastern District of Virginia. Venue is proper under 28 U.S.C. § 1391 as Defendant Brutti's is located in this district and substantially all the events giving rise to the claim occurred in this district.

**B.     Default Judgment Standard**

When a defendant fails to plead or defend, Federal Rule of Civil Procedure 55 outlines a two-step process for default judgment – first, the entry of default by the clerk, and second, the entry of default judgment by the clerk (if for a sum certain) or by the court (in all other cases). *See J & J Sports Productions, Inc. v. El Coyote Carpau Inc.*, 2014 WL 5147629, at *2 (E.D.N.Y. Oct. 14, 2014); Fed. R. Civ. P. 55(a).

**1.     Entry of Default by the Clerk**

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must

enter the party's default." Fed. R. Civ. P. 55(a). In this case, Defendant has failed to answer or otherwise respond to the Complaint, as reflected by the Declaration of Plaintiff's Counsel in Support of Request for Entry of Default filed on July 28, 2014. The Clerk of Court properly entered default as to Defendant Brutti's LLC on July 29, 2014. ECF No. 6. On August 5, 2014, Plaintiff filed its Motion for Default Judgment, a copy of which it also served upon Defendant's registered agent via first class mail on said date. Mot. for Default J., 2, ECF No. 7.

### 2. Motion for Default Judgment

The United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") has "repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits." *Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 417 (4th Cir. 2010). Nonetheless, default judgment "may be appropriate when the adversary process has been halted because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005). The plaintiff, however, is not entitled to a default judgment as a matter of right merely because the opposing party is in default. *See GuideOne Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc.*, 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010).

Although by his default a defendant admits a plaintiff's well-pleaded allegations of fact, the court must evaluate whether these "unchallenged facts"—which are to provide the basis for default judgment—sufficiently constitute a legitimate cause of action. *See Montblanc-Simple Gmbh v. Montblancpensale.org*, 297 F.R.D. 242, 245–46 (E.D. Va. 2014); *El Coyote Carpau Inc.*, 2014 WL 5147629, at *2 (quoting *RollsRoyce PLC v. Rolls–Royce USA, Inc.*, 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010). In other words, "liability does not automatically attach from the

well-pleaded allegations of the complaint, as it remains the court's responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief. *RollsRoyce PLC*, 688 F. Supp. 2d at 153 (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)). *See also Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("[A] default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover.").

Accordingly, in order to rule on the default judgment motion, the court must evaluate the plaintiff's complaint and determine whether the plaintiff sufficiently pleaded necessary facts that, when taken as true, support issuing a default judgment. *See J &J Sports Productions, Inc. v. Margarita Latino Corp.*, 2013 WL 3270573, at *1 (E.D. Va. June 26, 2013) (citing *Anderson v. Found. for Advancement, Educ. & Emp't. of Am. Indians*, 187 F.3d 628, 628 (4th Cir. 1999) (per curiam)); *Nishimatsu Constr. Co., Ltd.*, 515 F.2d at 1206 (stating that pleadings must provide a sufficient basis for the default judgment requested). A well-pleaded complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 602, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A "short and plain statement of the claim showing that the pleader is entitled to relief" is required. Fed. R. Civ. P. 8(a)(2). Thus, in considering a motion for default judgment, the appropriate inquiry is whether the facts as alleged state a claim. *Globalsantafe Corp. v. Globalsantafe.Com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003).

There are limitations on the extent to which a failure to respond will work against a defendant. Despite default, a defendant is not held to admit facts that are not well-pleaded or conclusions of law. *See J & J Sports Productions, Inc., v. Sisniega*, 2013 WL 3899664, at *4

(W.D.N.C. July 29, 2013) (quoting *DIRECTV, Inc. v. Pernites*, 200 F. App'x 257, 258 (4th Cir. 2006) (per curiam)); *Airlines Reporting Corp. v. Sarrion Travel, Inc.*, 846 F. Supp. 2d 533, 535 (E.D. Va. 2012).

### III. DISCUSSION

In its Complaint Plaintiff alleges Defendant violated sections 553 and 605. Section 553 provides:

> No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.
>
> Any person aggrieved by any violation of subsection (a)(1) of this section may bring a civil action in a United States district court or in any other court of competent jurisdiction.

47 U.S.C. § 553(a)(1); (c)(1).

In relevant part section 605 states:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.
> . . .
>
> For purposes of this section . . . the term "any person aggrieved" shall include any person with proprietary rights in the intercepted communication by wire or radio, including wholesale or retail distributors of satellite cable programming . . . .

9

. . .

> Any person aggrieved by any violation of subsection (a) of this section . . . may bring a civil action in a United States district court or in any other court of competent jurisdiction.

47 U.S.C. § 605(a); (d)(6); (e)(3)(A).

At the hearing, the Court stated that Plaintiff is precluded from double recovery for the same conduct. *The Wing Spot Chicken & Waffles, Inc.*, 920 F. Supp. 2d at 666. When asked under which statute it would be seeking recovery, Plaintiff elected to proceed under § 605. The Court will evaluate the sufficiency of Plaintiff's Complaint, i.e., whether Plaintiff has established Defendant's liability under § 605.[2]

## A. Plaintiff's Claim Under 47 U.S.C. § 605

Plaintiff's factual allegations pertaining to liability, which are admitted by Defendant's default and accepted by this Court as true, are as follows:

Plaintiff, for the purpose of commercial gain, entered into a closed circuit television license agreement to exhibit the Event at various closed-circuit business locations such as theaters, arenas, bars, clubs, lounges, and restaurants throughout Virginia. Pl.'s Compl. ¶ 6–7. Plaintiff paid substantial fees for its license. *Id.* at ¶ 6. Plaintiff marketed the closed-circuit rights granted to it. *Id.* at ¶ 9. Unintended for use by the general public, only Plaintiff's authorized commercial establishments could exhibit the Event. *Id.* at ¶ 8. Plaintiff distributed its closed-circuit rights to customers who paid Plaintiff a fee. *Id.* at ¶ 9. Plaintiff, through its agents, contracted with these establishments. *Id.* Plaintiff's paying establishments are

---

[2] In this district, courts have found that defendants' interception and broadcast of Plaintiff's events violated both §§553 and 605. *See e.g., Margarita Latino Corp.*, 2013 WL 3270573, at *2. The Court is in agreement with these cases and believes Defendant's conduct is also a violation of §553.

10

"authorized" to receive, transmit, and publish the Event. *See id.* at ¶ 11. The Event was electronically coded or "scrambled" and only Plaintiff's authorized customers were given the electronic decoding capability and/or satellite coordinates required to receive the Event signal. *Id.* at ¶¶ 10, 12.

Though the transmission was available to Defendant for purchase, Defendant did not contract with Plaintiff or any of its agents to obtain rights to broadcast the Event. *Id.* at ¶ 11. Defendant was never authorized to intercept, receive, or transmit the communication of the Event. *Id.* at ¶ 17. Nevertheless, Defendant intercepted and then published the Event to its patrons at Mansion Allure on June 9, 2012. *Id.* at ¶ 13. Defendant committed these actions for commercial advantage and private financial gain. *Id.* at ¶ 14.

Plaintiff's Complaint does not clearly state that the Event originated as a satellite signal, which would qualify as a radio communication under § 605. *See Int'l Cablevision, Inc. v. Sykes*, 997 F.2d 998, 1008 (2d Cir. 1993) (quoting 130 Cong. Rec. 31,879 (statement of Sen. Robert W. Packwood, Chairman, Senate Comm. on Commerce, Science, and Transportation) *reprinted in* 1984 U.S.C.C.A.N. 4746). Notwithstanding, Plaintiff's assertion that its paying customers needed "electronic decoding capability and/or satellite coordinates . . . to receive the signal of the Event," Pl.'s Complaint ¶ 12, is sufficient to establish that the Event originated with a radio transmission such that Defendant's unauthorized interception violated § 605. *See J & J Sports Productions, Inc. v. 291 Bar & Lounge, LLC*, 648 F. Supp. 2d 469, 473 (E.D.N.Y. 2009).[3]

---

[3] It should be noted that courts in this district have routinely recognized that this particular plaintiff's telecasts are covered by § 605. *See, e.g., J & J Sports Productions, Inc., v. After Six Productions, Inc.*, 2014 WL 644400, at *3–4 (E.D. Va. Feb. 19, 2014); *J & J Sports Productions, Inc. v. Wing Bistro LLC*, 2013 WL 6834645, at *5 (E.D. Va. Dec. 19, 2013); *Prestige Lounge, LLC*, 2013 WL 6506201, at *1–2; *J & J Sports Productions, Inc. v. Great Latin Restaurants, L.C.*, 2011 WL 5873093, at *3–4 (E.D. Va. Nov. 22, 2011).

Furthermore, Plaintiff alleges that as a result of its proprietary rights in the intercepted communication of the Event, obtained via substantial fees it paid for its License Agreement, Plaintiff is a "person aggrieved" as defined in § 605(d)(6) and is entitled to damages. Pl.'s Complaint ¶¶ 6, 29–31.

Thus, the Court **FINDS** that Plaintiff has sufficiently pleaded necessary facts in its Complaint that, when taken as true, establish Defendant's liability for violating §605 and therefore support this Court's issuance of a default judgment in Plaintiff's favor. Accordingly, the Court turns to Plaintiff's request for damages under §605.

B.  **Damages**

Having determined that Plaintiff has established Defendant's liability, the Court must establish the damages to which Plaintiff is entitled. Allegations relating to the amount of damages are not deemed admitted by default. Fed. R. Civ. P. 8(b)(6). Thus, if the court determines that a plaintiff has established liability, the court cannot accept as true factual allegations and must therefore make an independent determination regarding damages. *J & J Sports Productions, Inc., v. Panana, LLC*, 2014 WL 5454323, at *1 (D. Md. Oct. 24, 2014). In determining the appropriate sum, the court may rely on affidavits or documentary evidence in the record. *Id.* As a general matter, relief granted upon default judgment may not exceed the amount demanded in the pleadings. *See* Fed. R. Civ. P. 54(c).

Under § 605, the computation of damages is at the election of the aggrieved party. 47 U.S.C. § 605(e)(3)(C)(i). The aggrieved party may recover actual damages and any profits of the violator attributable to the violation. 47 U.S.C. § 605(e)(3)(C)(i)(I). The aggrieved party also has the option of recovering statutory damages ranging from a minimum of $1,000.00 to a maximum

of $10,000.00. 47 U.S.C. § 605(e)(3)(C)(i)(II). The exact amount of statutory damages is within the sound discretion of the court, as it "considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II). The court may also, in its discretion, increase or "enhance" the award of damages, whether actual or statutory, by an amount of not more than $100,000.00 if "the court finds the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii). If actual damages are difficult to prove, statutory damages are appropriate. *J & J Sports Productions, Inc. v. Brazilian Paradise, LLC*, 789 F. Supp. 2d 669, 675 (D.S.C. Apr. 27, 2011). In prior cases, Plaintiff has been awarded statutory damages because the default of various defendants rendered Plaintiff unable to conduct discovery. *See id.* Irrespective of whether damages are awarded, the court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees" to the aggrieved party who prevails. 47 U.S.C. § 605 (e)(3)(B)(iii).

1. **Statutory Damages**

In this Circuit, approaches to awarding statutory damages vary. Courts in this district have employed one of the two methods to determine statutory damages—employing a per patron rate or using a flat fee based on the unpaid sublicense fee. *The Wing Spot Chicken & Waffles, Inc.*, 920 F. Supp. 2d at 667. The accepted per patron rate in this district is $100.00.[4] *J & J Sports Productions, Inc., v. Wing Bistro LLC*, 2013 WL 6834645, at *7 (E.D. Va. Dec. 19, 2013). Courts using this method, however, are typically reviewing cases involving patrons that number less than 100. *See id.* (applied where approximately 40 customers were present); *Joe Hand Promotions, Inc., v. Citibars, Inc.*, 2012 WL 503212, at *5 (E.D. Va. Feb. 8, 2012)

---

[4] Per person rates in other districts have ranged from $50.00 to $250.00 per person. *See J & J Sports Productions v. El Tropicabana*, 2013 WL 3270563, at *3 (E.D. Va. June 26, 2013).

13

(applied where average of 49 customers were present); *Joe Hand Promotions, Inc., v. Veltsistas, LLC*, 2011 WL 5826059, at *2 (E.D. Va. Oct. 21, 2011) (applied where average of 50 customers were present) (adopted by *Joe Hand Promotions, Inc. v. Veltsistas*, LLC, 2011 WL 5826082 (E.D.Va. Nov. 18, 2011); *Joe Hand Promotions, Inc., v. Bougie, Inc.*, 2010 WL 1790973, at *5 (E.D. Va. Apr. 12, 2010) (applied where 10 customers were present).

Courts that assess a flat fee based on the unpaid sublicense fee calculate it based on the maximum occupancy of the establishment. *See J & J Sports Productions, Inc. v. Lara Sport House Corp.*, 2011 WL 4345114, at *6 (E.D.Va. Aug. 26, 2011) (awarding $2,200 in statutory damages based on 80-person occupancy rate where average of 46 persons present) (adopted by *J & J Sports Productions, Inc. v. Lara Sport House Corp.*, 2011 WL 4345098, at *1 (E.D. Va. Sept. 14, 2011); *J & J Sports Productions, Inc. v. Benson*, 2007 WL 951872, at *5 (E.D.N.Y. Mar. 27, 2007) (awarding $1,200 in statutory damages based on 50-person occupancy rate where only five persons present). Where defendant's establishment is at or near capacity during the unlawfully televised broadcast, an award of the maximum in statutory damages, $10,000.00 may granted. *See J & J Sports Productions, Inc., v. Great Latin Restaurants*, 2011 WL 5873071, at *5 (E.D. Va. Sept. 15, 2011) (finding maximum appropriate where 200 to 350 patrons were present in an establishment with a capacity of 400 persons) (adopted by *J & J Sports Productions, Inc., v. Great Latin Restaurants*, 2011 WL 5873093, at *1 (E.D. Va. Nov. 22, 2011)). The Fourth Circuit has not addressed any of these methods. *Brazilian Paradise*, 789 F. Supp. 2d at 676.

In its supporting memorandum Plaintiff stated its actual damages are $4,200.00 but requested $10,000.00 in statutory damages. Pl.'s Mem. in Supp. of Mot. for Default J., 4. At the

hearing, however, Plaintiff stated that it was seeking $5,000.00 in statutory damages instead. Because damages are computed at the aggrieved party's election, this Court will award statutory damages. A per patron rate of $100.00 would result in an award of $15,000.00, an amount which exceeds not only that which is allowable under the statute but also which Plaintiff requested in its Complaint. Instead, the Court will require Defendant Brutti's to pay a flat fee based on the sublicense fee. Plaintiff's investigator stated that the capacity of Mansion Allure is approximately 400 people. However, it is not clear whether this statement is based on a guess by the investigator or a maximum occupancy sign posted in the establishment. And Plaintiff does not substantiate the investigator's statement as to occupancy with either a photo of a sign indicating Defendant's maximum occupancy or official documentation from regulating authorities with this information. Had Plaintiff done so, this Court could award statutory damages of $8,200.00. Gagliardi Aff., Ex. 1 (indicating a $8,200.00 sublicensing fee for seating capacity of 300 to 400 persons). Absent this effort by Plaintiff, the Court, in its discretion, declines to rely solely on the investigator's statement and instead will use the greatest number of patrons counted to calculate damages. It is clear Defendant profited from at least that number of patrons. *See J & J Sports Productions, Inc., v. Guzman*, 553 F. Supp. 2d 195, 199 (E.D.N.Y. 2008). For an establishment with an occupancy rate of 150 occupants, Defendant would have paid a $4,200.00 sublicensing fee. Thus, under 47 U.S.C. § 605(e)(3)(C)(i)(II), the Court finds it appropriate and "just" to award Plaintiff statutory damages in the amount of $4,200.00.

### 2. Enhanced Statutory Damages

An award of enhanced damages is primarily based on whether willfulness is present. Under other civil statutes, the Supreme Court of the United States has interpreted willful

15

behavior to include "a disregard for the governing statute and an indifference to its requirements." *El Coyote Carpau Inc.*, 2014 WL 5147629, at *4 (quoting *TransWorld Airlines v. Thurston*, 469 U.S. 111, 127 (1985)). Aside from evidence of willfulness, in reaching an enhanced damages award, courts have considered a number of other factors such as whether the defendant is a repeat violator, if there were monetary gains, if the defendant advertised the broadcast, and if the defendant charged an admission fee or premium on food and drinks. *J & J Sports Productions, Inc., v. Sabor*, 2014 WL 2964477, at *3 (D. Md. June 27, 2014) (citing *J & J Sports Productions, Inc., v. Quattrocche*, 2010 WL 2302353, at *2 (D. Md. June 7, 2010)). Enhanced damages have been awarded in order to offset the defendant's gain and to deter the defendant from future misconduct. *Veltsistas, LLC*, 2011 WL 5826059, at *3.

Courts have routinely declined to award the maximum in enhanced damages. Indeed, with rare exception, the awards are significantly less. Enhanced damages in this District assessed for purposes of deterrence for non-repeat offenders run the gamut: $6,000.00, *Margarita Latino Corp.*, 2013 WL 3270573, at *4 (no cover charge, advertisement, or premium on food or drink); $12,000.00, *J & J Sports Productions v. El Tropicabana, LLC*, 2013 WL 3270563, at *4 (E.D. Va. June 26, 2013) (billboard advertisement but no cover charge or premium on food and drink); $27,000.00, *The Wing Spot Chicken & Waffles, Inc.*, 920 F. Supp. 2d at 669 (no cover charge, advertisement, or premium on food or drink); $100,000.00, *Great Latin Restaurants, L.C.*, 2011 WL 5873071, at *6 (no cover charge, advertisement, or premium on food or drink but attendance near capacity), adopted and incorporated by *J & J Sports Productions, Inc. v. Great Latin Restaurants, L.C.*, 2011 WL 5873093 (E.D. Va. November 22, 2011). Notwithstanding the need for deterrence, courts are mindful that one violation is not

16

severe enough to justify putting a defendant out of business. *See The Wing Spot Chicken & Waffles, Inc.*, 920 F. Supp. 2d at 669.

Based on the head count, cover charge, and the need for deterrence, Plaintiff requested enhanced damages of $25,000.00 at the hearing. Plaintiff admittedly cannot tell this Court exactly what means Defendant employed to illegally intercept and broadcast its Event. *See* Gagliardi Aff. ¶9. Nevertheless, the Court does not need this information. Plaintiff asserts its signal "cannot be mistakenly, innocently, or accidentally intercepted." Gagliardi Aff. ¶ 9. Indeed, as has been stated in similar cases, "[s]ignals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems." *Time Warner Cable of New York City v. Googies Luncheonette*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999). Defendant did not enter a licensing agreement with Plaintiff so it is clear that whatever method Defendant employed to intercept and exhibit Plaintiff's signal required a willful act. Whether by use of a "blackbox" "smartcard," or "cable splice," the purchase of illegal satellite authorization codes, or the purposeful misrepresentation as a residential property to allow fraudulent purchase of Plaintiff's programming, or some other means, *see* Gagliardi's Aff., ¶ 9, Defendant willfully and unlawfully intercepted and broadcast Plaintiff's Event without regard for § 605 and its requirements. Furthermore, Defendant's assessment of a cover charge is not only an additional demonstration of willfulness, it also suggests Defendant's conduct was for financial gain. At a cover charge of $20.00 per person, with 150 people, Defendant would have profited $3,000.00. Though a relatively nominal gain, the Court is mindful that as a commercial establishment, Defendant made this profit at no cost to itself. After consideration of the facts of this case including Defendant's use of a cover charge, profit gained, and its status as a non-repeat

17

offender, as well as a review of similar judgments within and without this Circuit, the Court concludes that while the maximum recoverable under enhanced damages, i.e., $100,000.00, is not warranted, $25,000.00, is sufficient to offset Defendant's gain and to deter Defendant from future misconduct.

### 3. Attorney's Fees and Costs

Plaintiff asks the Court to grant attorney's fees and costs amounting to $ 2,502.76. As evidence of work done and reasonable value of said work, Plaintiff has submitted the declaration of W. Brian McCann. Mr. McCann worked at a rate of $200.00 per hour. Mr. McCann's declaration states that the legal fees "represent the true and accurate time spent by lawyers for the firm," McCann Declaration ¶ 3, and that "hourly rates charged by the lawyers are the established rate charged by this firm for each person's time," McCann Declaration ¶ 5. According to Mr. McCann's declaration, 10.3 hours were spent working on the case. The total for attorney's fees amounts to $2,060.00.

There are additional costs of $442.76. These consist of $400.00 in filing fees, $11.80 in office copying/printing, $19.96 in postage, and $11.00 in private process server fees. These costs are reasonable. Thus, the Court **GRANTS** Plaintiff's request for $2,502.76 in attorney's fees and costs.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion for Default Judgment. The Court **ENTERS** a default judgment in favor of Plaintiff J & J Sports Productions, Inc. and

against Defendant Brutti's LLC, d/b/a Mansion Allure & Brutti's in the aggregate amount of $31,702.76. This amount represents $4,200.00 in statutory damages, $25,000.00 in enhanced statutory damages, and $2,502.76 in costs and reasonable attorney's fees.

The Clerk is **DIRECTED** to send a copy of this Memorandum Opinion and Order to counsel of record and, via certified mail, to Defendant's registered agent.

**IT IS SO ORDERED.**

Norfolk, Virginia
December 22, 2014

/s/
Raymond A. Jackson
United States District Judge